# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

|  |  |
|---|---|
| WABTEC CORPORATION<br><br>*Plaintiff,*<br><br>and<br><br>STRATO, INC.,<br><br>*Plaintiff-Intervenor*<br><br>v.<br><br>UNITED STATES,<br><br>*Defendant,*<br><br>and<br><br>COALITION OF FREIGHT COUPLER PRODUCERS,<br><br>*Defendant-Intervenor*. | Court No. 1:23-cv-00160<br><br>**PUBLIC DOCUMENT** |

## **SUPPLEMENTAL REPLY BRIEF OF WABTEC CORPORATION**

David M. Morrell
Shelbie M. Rose

JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
1.202.879.3636
dmorrell@jonesday.com

*Counsel for Wabtec Corporation*

Dated: March 21, 2025

**TABLE OF CONTENTS**

ARGUMENT ............................................................................................................................... 1

I.     Commerce Alone Has the Ability to Address Wabtec's Scope Argument. ....................... 1

II.    There Is No Meaningful Dispute that All Elements Necessary for the Imposition of a Duty Must Be Satisfied. ................................................................................................ 5

III.   Defendants Overlook the Proper Comparison for Distinguishing Classes or Kinds of Merchandise and Fail to Justify the Ad Hoc Test Applied Below. ............................... 6

# **TABLE OF AUTHORITIES**

Page

**CASES**

*Bioparques de Occidente, S.A. de C.V. v. United States*,
  745 F. Supp. 3d 1322 (CIT 2024)......................................................................................10

*Full Member Subgroup of Am. Inst. of Steel Constr., LLC v. United States*,
  81 F.4th 1242 (Fed. Cir. 2023).............................................................................................3

*Hitachi Metals, Ltd. v. United States*,
  949 F.3d 710 (Fed. Cir. 2020)..............................................................................................4

*Kyocera Solar, Inc. v. United States Int'l Trade Comm'n*,
  844 F.3d 1334 (Fed. Cir. 2016)........................................................................................1, 4

*M S Int'l, Inc. v. United States*,
  32 F.4th 1145 (Fed. Cir. 2022) ............................................................................................2

*Mid Continent Nail Corp. v. United States*,
  725 F.3d 1295 (Fed. Cir. 2013)............................................................................................8

*OMG, Inc. v. United States*,
  972 F.3d 1358 (Fed. Cir. 2020)............................................................................................7

*RZBC Grp. Shareholding Co. v. United States*,
  100 F. Supp. 3d 1288 (CIT 2015)........................................................................................6

*Torrington Co. v. United States*,
  745 F. Supp. 718 (CIT 1990)...............................................................................................4

*Trendium Pool Products, Inc. v. United States*,
  399 F. Supp. 3d 1335 (CIT 2019).....................................................................................6, 7

*United States v. Int'l Trading Servs., LLC*,
  190 F. Supp. 3d 1263 (CIT 2016).....................................................................................9, 10

**STATUTES**

19 U.S.C.
  § 1671a(a) ........................................................................................................................2, 5

§ 1673a(a)(1)............................................................................................................................5
§ 1673b(a)(1) ..........................................................................................................................5
§ 1673d(b)(1) ..........................................................................................................................5

**OTHER AUTHORITIES**

19 C.F.R. § 351.225(k) .........................................................................................................10

**ARGUMENT**

I.     **Commerce Alone Has the Ability to Address Wabtec's Scope Argument.**

Though agreeing that Wabtec should lose, Commerce and Petitioner cannot agree on why. And, more importantly, neither offers any evidence that the Tariff Act addresses lost export sales or that Commerce is powerless to conform the scope to the limits of the Tariff Act.

**A.**  Start with Commerce.  Despite having months to ponder the question, Commerce still cannot say who must address Wabtec's argument that the scope cannot include couplers sold into Mexico for attachment to new railcars in Mexico.  Commerce agrees that, in single-country cases, the Commission's findings can narrow the scope of a final order *only* when the Commission defines two or more domestic industries and finds no material injury with respect to one of them.  Gov't Supp. Br. 9; *see also* Petr. Supp. Br. 4–5.  But that concept has no relevance to Wabtec's scope argument because, as no one disputes, there is only one domestic industry: producers of freight rail couplers.  Thus, even though a portion of the scope was legally infirm (*i.e.*, because it was intended to address lost export sales to Mexico), the Commission had to make an up-or-down vote as to whether *all* subject merchandise, as Commerce defined it, causes domestic injury.  As Commerce admits, the Commission does not "make injury determinations with respect to individual *products* within the domestic like product (rather than for the relevant domestic industry as a whole)."  Gov't Supp. Br. 7 n.1.  So even if Wabtec could convince the Commission of its legal argument with respect to the offending subset of merchandise (the so-called "attached" couplers), the Commission would have no mechanism for effectuating that judgment.  *Kyocera*—which Defendants have no answer to and thus choose to ignore—makes this plain.  *See Kyocera Solar, Inc. v. United States Int'l Trade Comm'n*, 844 F.3d 1334, 1337 (Fed. Cir. 2016) (explaining that the Commission had no authority to distinguish solar modules imported from Mexico and

1

solar modules imported from Taiwan in conducting *its own* negligibility analysis because it had to "defer to Commerce's definition of the scope").

For its part, Commerce denies any authority to address this issue, either. Gov't Supp. Br. 7–9. Thus, according to Commerce, **no one** can address whether the Tariff Act reaches lost export sales. That cannot be right. If accepted, this would grant petitioners an unlimited license to artfully draft a petition's scope to cover lost export sales in every case—even though, as no one seriously disputes, the Tariff Act is designed to address unfair competition *in the United States*.

In truth, Commerce is not hamstrung from addressing such glaring defects in a petition. As Commerce does not dispute (at 11), a final order cannot issue unless all "the elements necessary for the imposition of a duty … exist." 19 U.S.C. § 1671a(a). Accordingly, Commerce *must* screen out petitions that do not allege a legally cognizable theory, given that an essential "element{}" is lacking. That authority is entirely consistent with Commerce's "inherent power to establish the parameters of the investigation" and to "depart from the scope as proposed by a petition if it determines that petition to be 'overly broad … or in any other way defective.'" *M S Int'l, Inc. v. United States*, 32 F.4th 1145, 1151 (Fed. Cir. 2022). Moreover, because whether the Tariff Act authorizes duties to address lost export sales is a pure question of law, Commerce's consideration of the issue could not possibly detract from the Commission's role in the statutory scheme.

**B.** Petitioner arrives at Commerce's same destination by a wholly different road. Unlike Commerce—which all but admits that the Commission had no mechanism for addressing Wabtec's argument—Petitioner claims (at 5, 9–10) that Wabtec should have argued to the Commission that "attached" couplers and unattached couplers are distinct domestic like products. But there is zero conceptual relationship between how the Commission defines the domestic like product and Wabtec's argument, *i.e.*, whether the Tariff Act reaches lost export sales. The whole point of the

2

"domestic like product" concept is to define the *domestic industry*. *Full Member Subgroup of Am. Inst. of Steel Constr., LLC v. United States*, 81 F.4th 1242, 1251 (Fed. Cir. 2023) ("{W}hether a U.S. producer is a member of the pertinent domestic industry is determined on the basis of whether it produces a domestic like product."). Wabtec's objection is not that there are two domestic industries. Rather, it is that *no* domestic industry (however defined) is entitled to obtain relief for lost export sales under the Tariff Act. There is, in short, a mismatch between the domestic industry concept and Wabtec's argument.

Petitioner's claim fails for another reason: Wabtec could not have pushed the Commission to define two separate domestic industries based on two separate domestic like products, because the products are identical. Indeed, every "*attached* coupler" was born an *unattached* coupler. The only difference is *where* the coupler is sold and attached—"attached" couplers are sold in Mexico and attached to railcars in Mexico, while "unattached" couplers are imported and sold into the United States and then attached to railcars. But *where* sales may be lost by the domestic industry cannot possibly impact how the Commission defines the domestic like product and domestic industry. Tellingly, Petitioner makes no effort to show how the Commission's six-factor test for ascertaining whether to define multiple domestic like products would even be applied to the attached/unattached construct. Nor could it. Precisely because "attached" couplers and unattached couplers are *identical merchandise*, there is no product distinction to draw between them.[1]

Petitioner's observation that "Commerce's scope finding does not control the Commission's like product determination" is thus a red herring. Petr. Supp. Br. 9; *see also* Gov't

---

[1] It is useful to recall that there is no such thing as an "attached" coupler. It is a *shorthand* the parties developed in this litigation to describe a particular species of unattached couplers—namely, those that were (i) sold to railcar builders in Mexico, (ii) incorporated into railcars, which were (iii) imported into the United States.

3

Supp. Br. 3 (similar). Where, as here, there is no basis for the Commission to identify multiple domestic like products, it must cast an up-or-down vote with respect to *all* subject merchandise, even if a subset of that merchandise was improperly included within the scope to address lost export sales to Mexico. *See, e.g.*, *Kyocera*, 844 F.3d at 1339 ("{T}he statute plainly requires that the Commission make its determinations with regard to subject merchandise.").

Finally, if it were true that the Commission could have defined two domestic like products around the attached/unattached distinction, that simultaneously means Commerce could have defined two classes or kinds of merchandise around the same distinction (as it did in *Torrington*) and vetted the "attached" category to determine whether the petition was legally sufficient to initiate an investigation into that standalone "product." After all, the class-or-kind and domestic-like-product factors overlap almost completely.[2] Had Commerce separated unattached and "attached" couplers here, Petitioner would have had to allege a standalone case against Chinese couplers sold into Mexico and attached to new railcars there, which were then reimported into the United States. No one seriously thinks Commerce would have initiated such an investigation.

For these reasons, Wabtec's point still stands: there is simply no concept administered by the Commission that could have revised the scope as Wabtec demands. Thus, it necessarily falls to Commerce to exercise its inherent authority to exclude "attached" couplers from the scope.[3]

---

[2] *Compare Torrington Co. v. United States*, 745 F. Supp. 718, 723 (CIT 1990) (noting that Commerce can subdivide the petition's class or kind description based on "1) general physical characteristics; (2) the expectations of the ultimate purchasers; (3) the channels of trade in which the merchandise moves; (4) the ultimate use of the product; and, (5) cost"), *with Hitachi Metals, Ltd. v. United States*, 949 F.3d 710, 715 (Fed. Cir. 2020) (explaining that "whether the subject merchandise corresponds with a single domestic like product or multiple domestic like products" depends on "(1) physical characteristics and uses; (2) channels of distribution; (3) interchangeability; (4) customer and producer perceptions; (5) common manufacturing facilities, production processes, and production employees; and where appropriate (6) pricing").

[3] Petitioner also bizarrely suggests (at 8–9) that the Commission's preliminary material-injury determination could have somehow addressed Wabtec's scope objection. The only

## II. There Is No Meaningful Dispute that All Elements Necessary for the Imposition of a Duty Must Be Satisfied.

Commerce does not dispute that it "cannot issue a final order unless all 'elements necessary for the imposition of a duty … exist.'" Gov't Supp. Br. 11; *see also* 19 U.S.C. §§ 1671a(a); 1673a(a)(1) (imposing this requirement). Instead, it says that requirement is satisfied here because Commerce and the Commission each "issued final affirmative determinations." Gov't Supp. Br. 11; *see also* Petr. Supp. Br. 7 (similar). That is like telling an appellate court that an injunction must be affirmed because the district court found all the elements for injunctive relief were satisfied—it wholly ignores whether that analysis was correct. Likewise here, it is a total non-answer to observe that Commerce and the Commission reached final affirmative determinations with respect to all those elements—the issue here is whether those determinations were correct.

Petitioner, on the other hand, doubts Wabtec's argument that all elements must be satisfied to impose a duty, as this could imply that Commerce can review the Commission's injury determinations. Petr. Supp. Br. 7. Wabtec's argument is not that Commerce should *review* injury determinations; it is that Commerce should have drafted the scope to conform to the legally cognizable theories alleged in the petition and thereby prevented the subset of merchandise at issue (couplers sold to and attached in Mexico) from even being considered by the Commission.

Petitioner's remaining arguments do not undermine Wabtec's point that all elements must be satisfied to impose a duty. In Petitioner's worldview, the limits on Commerce's authority are "primarily focused" on *constraining* the agency from frustrating petitioners' intent. Petr. Supp. Br.

---

difference between a preliminary and final determination is the *evidentiary standard*: in the preliminary phase, the Commission need only find "a reasonable indication" of material injury, 19 U.S.C. § 1673b(a)(1); in the final phase, it must find that there "is" material injury, *id.* § 1673d(b)(1). The distinction is analogous to the preliminary-injunction context: a court determines whether there is a "likelihood of success" on the merits at the PI stage, but actually decides the merits at the final-judgment stage. But in both cases, the governing law is the same.

6. That overlooks the distinct possibility that what petitioners request may not be authorized by the Tariff Act. Petitioner notes that "Commerce may set the scope 'with the purpose in mind of preventing the intentional evasion or circumvention of the antidumping duty law.'" Petr. Supp. Br. 7 (citation omitted). But that logic would equally condemn petitioners' efforts to artfully plead around the Tariff Act's limits. Petitioner also analogizes itself to a plaintiff in civil litigation choosing causes of action (at 6), but this ignores that courts regularly grant motions to dismiss precisely because what plaintiffs have alleged, even if factually true, fails to state a claim. *See RZBC Grp. Shareholding Co. v. United States*, 100 F. Supp. 3d 1288, 1292 (CIT 2015) (explaining that Commerce can reject petitions that "fail to state a claim upon which relief can be granted").

### III. Defendants Overlook the Proper Comparison for Distinguishing Classes or Kinds of Merchandise and Fail to Justify the Ad Hoc Test Applied Below.

Regarding the test for distinguishing between classes or kinds of merchandise, Defendants largely frame the issue as whether the test should be *Diversified Products*, substantial transformation, or something else. But Wabtec raised a more fundamental point that neither party meaningfully addresses: how the inquiry should be framed under any of these tests.

**A.** Go back to first principles. As no one disputes, an order can cover only a single class or kind of merchandise. Imports are often comprised of various inputs, which means that Commerce must first determine what the imported product *is*—a collection of individual products comprising multiple classes or kinds of merchandise, or a unitary product constituting a single class or kind of merchandise? Nor does anyone dispute that inputs can lose their identity—cease to exist—in the eyes of the law when merged into a unitary article. *See Trendium Pool Products, Inc. v. United States*, 399 F. Supp. 3d 1335, 1343 & n.3 (CIT 2019). But whether this happens to an input has implications on whether it can be included in a final order. For instance, if an imported zinc anchor is "two or more pieces," the steel pin contained within the anchor could be subject to

an order on "nails." *OMG, Inc. v. United States*, 972 F.3d 1358, 1364 (Fed. Cir. 2020). But if a zinc anchor is a "unitary item," the steel pin in the anchor no longer exist in the eyes of the law and thus is not subject to the same order on nails. *Id.* To determine the right answer, the framing for any inquiry (regardless of which substantive test applies) must be a comparison between the upstream product (steel pin) and the downstream product (zinc anchor). It would make no sense to frame the inquiry as "steel pins" to "steel pins in zinc anchors," because a pins-to-pins comparison loads the dice in favor of finding the same class or kind of merchandise in every case.

These principles are critical because no one disputes that a coupler is a separate class or kind of merchandise from a railcar—and that an order on couplers cannot apply to railcars. Thus, the only way an order on couplers could apply to "attached" couplers is if "attached" couplers do not form a unitary article (a railcar), but are separate and distinct from a railcar. To answer that question, Commerce must apply some ascertainable standard to a properly framed comparison. As Wabtec's litany of examples shows (Supp. Br. 12), Commerce's longstanding practice is to compare the upstream product (coupler) to the downstream product (railcar). By instead using a coupler-to-coupler comparison, Commerce effectively pretermitted *the* central question and pre-determined the outcome. And Defendants fail to offer a single precedent supporting this framing.

There is a reason Defendants could not cite a single precedent in their favor. It would upend ancient customs principles (e.g., condition of import rule), and eviscerate the limits on the trade-remedy laws, as petitioners could reach the tiniest inputs in the largest of products. A bolt in a cargo ship and a nail in rocking chair would both be subject to orders on bolts and nails, respectively. And, by that logic, petitioners could also upend country-of-origin rules merely by claiming that, regardless of what the substantial transformation test might say, an import from a given country is really of Chinese origin because of the presence of a single minor Chinese input.

Commerce falls back on two basic arguments. *First*, it denies that the frame of reference for identifying the relevant article—"the product coming across the border"—must be the same when defining scope versus applying it. Gov't Supp. Br. 14. Commerce offers no support for this skepticism, nor does it propose any other frame of reference. It simply observes that Wabtec cited scope-ruling cases rather than scope-determination cases. But as Wabtec explained, "orders only apply to merchandise upon importation," and so as a matter of common sense, if "the product coming across the border" is not of the same class or kind of merchandise covered by an order, it cannot be subject to the order. Wabtec Supp. Br. 9. And while it may be true that Commerce has more discretion in defining scope than interpreting it, that does not mean it can ignore the foundational legal principles underpinning the entire customs and trade regime when it does so. *Second*, Commerce asserts that the coupler-to-railcar comparison is inapt because "railcars are not included in the scope of the orders." Gov't Supp. Br. 15. That is a total non-sequitur—*of course* railcars are not in scope. That is why Commerce must assess whether a coupler embedded into a railcar retains its identity as a coupler, or has become a railcar. If the latter, the coupler may not be subject to an order on "couplers," because the only product coming across the border is a railcar.

Petitioner waves away Wabtec's argument (at 13–15) on the ground that some of its cases mention the mixed-media test. This test assesses whether a component in a "mixed media" set (*i.e.*, an "aggregation of separate items") is subject to an order even though that component is imported with non-subject merchandise. *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1298 (Fed. Cir. 2013). But Wabtec is not asking the Court to apply the mixed-media test: as Judge Restani explained, the mixed-media test "is not useful for deciding what the imported item is, as it presupposes that the product in question is appropriately considered a 'mixed media' item." *MacLean Power, L.L.C. v. United States*, 359 F. Supp. 3d 1367, 1372 n.3 (CIT 2019). And of

8

course, Wabtec's position is that a railcar is a unitary article, not mixed media. Still, these cases are useful because they distinguish between unitary articles and mere aggregations of separate items, a central feature of Wabtec's argument. Wabtec Opening Br. 34–37; Reply Br. 14–17; *see also* Appx3470, 3717–18, 6364–65 (discussing mixed-media cases for unitary-article principle).[4]

**B.** Once the comparison is properly framed (*i.e.*, couplers to railcars), Wabtec prevails under any test—though, as Wabtec explained, Commerce's longstanding practice has been to apply the *Diversified Products* factors.[5] Wabtec Supp. Br. 8. Commerce failed to apply that test here, and even now, it lacks any coherent position on what the test should be. On the one hand, it acknowledges that Commerce "typically" applies the *Diversified Products* factors to parse between classes or kinds of merchandise, and even hints that Commerce intended to apply that test here. *See* Gov't Supp. Br. 13. But in the next breath, Commerce says that it "is not required to articulate a single standard to govern establishing the scope of an order." *Id.* Whatever discretion the agency has in this regard, all agree it must provide a "reasoned explanation" when it departs from its typical practice, as Commerce itself acknowledges, *see id.* (citing *Canadian Solar, Inc. v. United States*, 918 F.3d 909, 918–19 (Fed. Cir. 2019)), and as Wabtec has repeatedly argued, *see* Wabtec Supp. Br. 8; Wabtec Reply Br. 23; Wabtec Opening Br. 42. Yet Commerce does not dispute that it neither displayed an awareness that it was departing from typical practice (*i.e.*, applying *Diversified Products*) nor offered a reasoned explanation for its departure. Petitioner apparently agrees that Commerce did not apply *Diversified Products*, as it defends Commerce's supposed application of the substantial-transformation test (at 12–13). But Commerce did not apply the

---

[4] We cite the record from the AD case, but the sources appears in the CVD record as well.

[5] Though Commerce and Petitioner continue to ignore the point, it remains noteworthy that CBP treats "attached" couplers and railcars as a single unitary product, as Petitioner itself acknowledged in its petition. *See* Wabtec Opening Br. 37 (citing Appx4874 and Appx2472). Commerce has no reasonable basis to reach a contrary conclusion.

9

standard version of that test, either. Wabtec Supp. Br. 15. Either way, the failure to apply these tests, or acknowledge and explain why it was applying a different test, alone requires remand.

Petitioner misleadingly suggests (at 10–11) that Wabtec is trying to inject 19 C.F.R. § 351.225(k)—which codifies the *Diversified Products* factors in the scope-ruling context—into the scope-determination context. Wabtec does not contend that Commerce should have applied that regulation here. Rather, Commerce should have applied the *Diversified Products* factors themselves, which predate § 351.225(k) and have been applied by Commerce in the scope-determination context to ensure that an investigation covers only one class or kind of merchandise.

Finally, Defendants' waiver arguments, while reflecting a rare point of agreement between Commerce and Petitioner, are meritless. Before the agency, scope comments raised the *Diversified Products* factors explicitly, *see* Appx3706–09, which were incorporated by reference in the final phase, *see* Appx6338, 6372. The parties also expressly rejected Commerce's framing of the issue and insisted, as Wabtec does here, that the "legally relevant inquiry" is whether "an FRC is itself a separate class or kind of merchandise from a freight rail car." Appx6373. Commerce therefore had the opportunity to address the argument (but arbitrarily did not). *See* Appx6289–91; *see also Bioparques de Occidente, S.A. de C.V. v. United States*, 745 F. Supp. 3d 1322, 1325 (CIT 2024) ("[E]xhaustion may be excused if the issue was raised by another party, or if it is clear that the agency had an opportunity to consider it."). And Wabtec raised the *Diversified Products* factors in its opening brief. *See* Wabtec Opening Br. 33–34 & n.11. Because Defendants failed to address that argument, any exhaustion or waiver argument is itself waived. *See United States v. Int'l Trading Servs., LLC*, 190 F. Supp. 3d 1263, 1270 (CIT 2016).

For these reasons and those set forth in its prior briefing, Wabtec requests that this Court remand with instructions to issue a new determination that is consistent with this Court's decision.

10

        Respectfully submitted,

        */s/ David M. Morrell*
        David M. Morrell
        Shelbie M. Rose

        JONES DAY
        51 Louisiana Avenue, N.W.
        Washington, D.C. 20001
        1.202.879.3636
        dmorrell@jonesday.com

        *Counsel for Wabtec Corporation*

Dated:  March 21, 2025

**CERTIFICATE OF COMPLIANCE**

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this Supplemental Brief, filed on March 21, 2025 complies with the page count limitation requirement issued in Judge Vaden's Minute Order dated December 20, 2024. The page count for Wabtec's Supplemental Reply Brief, is 10 double spaced pages.

/s/ David M. Morrell
David M. Morrell

*Counsel for Wabtec Corporation*

Dated: March 21, 2025